# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**BENJAMIN W. SMITH,**                                    **PETITIONER**

**V.**                       **NO. 3:03CR122-GHD**

**UNITED STATES OF AMERICA,**                    **RESPONDENT**

## MEMORANDUM OPINION

Petitioner, Ben Smith, filed his original § 2255 motion on February 4, 2005. Having denied all but one of his claims for habeas relief, the court conducted an evidentiary hearing on May 22, 2008, for the limited purpose of determining whether Petitioner timely asked his attorney to file a notice of appeal from his plea and sentence.

After careful consideration of the arguments, testimony and exhibits presented at the hearing along with the parties' prior submissions, the court finds that the Petitioner has failed to satisfy his burden of proof.

*A. Factual and Procedural Background*

On August 28, 2003, Petitioner was charged in a four-count indictment with conspiracy to distribute marijuana, possession of marijuana with intent to distribute, and possession of firearms in furtherance of a drug trafficking crime.[1] Petitioner retained Kent Smith as his attorney and plead not guilty at his arraignment. On April 9, 2004, with the assistance of counsel but without a plea agreement, Smith pled guilty to all four counts of the indictment.

Subsequent to his guilty plea and days before the imposition of his sentence, Smith dismissed

---

[1] Smith had previously been charged through criminal information of similar charges. *See U.S. v. Smith*, No 3:03CR028. With the assistance of his retained counsel, Warner Hodges, Smith entered into a plea agreement. Later, upon motion, Smith was allowed to withdraw the plea agreement. The information was dismissed and the case was closed on October 9, 2003.

attorney Kent Smith and retained attorney James Franks.[2] On June 23, 2004, the court sentenced Smith to ten years imprisonment[3], the statutory minimums established by 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 924(c)(1). Smith did not appeal his conviction or his sentence.

On January 28, 2004, while the criminal case was pending, Smith filed a civil complaint naming as defendants the Assistant United States Attorney ("AUSA") who was prosecuting the criminal matter and the Federal Bureau of Investigation Special Agent who investigated Smith. The civil suit was Smith's attempt to regain possession of his truck and home that had been seized after his arrest in the criminal case. By opinion of the court on April 12, 2004, the civil matter was dismissed for failure to state a claim upon which relief could be granted. *See Smith v. U.S., et al.*, No. 3:04CV014 (April 12, 2004).

On February 4, 2005, Smith filed his original motion to vacate his sentence setting forth essentially five grounds for relief. In his own words, Petitioner argued:

| | |
|---|---|
| Ground One: | he was denied effective assistance of counsel because his attorney was laboring under a conflict of interest; |
| Ground Two: | the AUSA was laboring under a conflict of interest; |
| Ground Three: | the evidence was insufficient to sustain his conviction for possession of a firearm; |
| Ground Four: | his conviction and sentence violated the principals established in *Blakely v. Washington*, 524 U.S. 296 (2004); and |
| Ground Five: | his mental condition invalidated his plea and sentence. |

---

[2] Prior to the indictment, Smith offers that he retained attorney Warner Hodges. Attorney Hodges never entered an appearance on Smith's behalf.

[3] Smith's sentence consisted of 60 months for Counts 1 through 3 to be served concurrently, and 60 months on Count 4 to be served consecutively.

A supplemental filing included the accusation that despite being asked to do so, attorney James Franks failed to perfect an appeal.

On November 19, 2007, in a memorandum opinion the court denied each of Smith's grounds for relief except for his supplement argument. Since the criminal record was devoid of any information on the topic, the court held a limited evidentiary hearing to determine only whether Smith did, in fact, timely request his attorney to perfect an appeal.

### B. Summary of the Evidence

At the evidentiary hearing, Petitioner called four witnesses, Elaine McMillen, Stephen A. Smith, Allia Siegfried, and Debra Banks. Each witness had also previous provided an affidavit on Smith's behalf. The content and form of the affidavits were identical. Each affiant attested that on the day Smith was sentenced, they met with attorney James Franks. The affidavits included the narrative that James Franks approached them as a group and stated that "Ben had stated that he wanted to appeal within the ten (10) days and that he, Mr. Franks, would file the Notice of Appeal as requested by Ben."

The Government's only witness was attorney James Franks. The Government also introduced into evidence Franks' affidavit along with a "attorney employment contract." The contract expressly limited Franks' representation of Smith to the "sentencing only" and specifically excluded "any appeal."

Elaine McMillen, formerly Elaine Moody, Smith's sister testified first. She was questioned by Smith's attorney[4] while viewing the aforementioned affidavit. After reading the narrative, Elaine

---

[4] In accordance with Rule 8(c) of the Rules governing § 2255 proceedings, the honorable David O. Bell was appointed to represent Smith at the evidentiary hearing. Attorney Bell did not represent Smith at any other stage of the criminal or civil matter.

3

then recalled that she was present at Smith's sentencing. She further stated that attorney Franks met with her and the other affiants after the sentencing and informed them that Smith was entitled to an appeal. Elaine stated that "we kind of left it in [attorney Franks'] hands to do that." Lastly, Elaine admitted that her only subsequent contact with attorney Franks was asking for the return of bond money.

Smith's son, Steven A. Smith, was called next. Like Elaine, after viewing the affidavit, Steven Smith recalled being present at his father's sentencing. Steven, however, could not recall who prepared the affidavit or when and where he signed the document.[5] Nevertheless, Steven elaborated that he and the other witnesses met with attorney Franks in the hallway outside the courtroom after the sentencing. Steven specifically recalled asking Franks, "is there anything else we could do." Steven vaguely remembered Franks informed them that the rules allow ten days to appeal. According to Steven, Franks then asked "is that what you want to do," to which Steven recalls replying "yeah." Steven further offered that he was to contact Franks the following Monday regarding the appeal. Aware that the employment contract with Franks was limited to the sentencing only and despite repeated attempts, Steven stated that he never spoke with Franks again.

Next, Smith's daughter, Allia Siegfried, formerly Allia Smith, testified. Unlike, Elaine and Steven before her, Allia did not review the affidavit at the beginning of her testimony. Although Allia could not remember the name of Smith's attorney present at the sentencing hearing, her recollection was otherwise consistent with that of Elaine and Steven regarding the day of sentencing

---

[5] Steven originally stated that Franks had prepared the affidavits which seems an illogical and very unlikely proposition. Steven then stated they–being the affiant family members–all signed the documents at the same time and in the same location but couldn't remember exactly when or where. Contrary to his testimony, however, the affidavits reflect that each document was signed on a different date, at different locations and notarized by different people.

4

and location of the discussion with the attorney. She also recalled asking the attorney about the possibility of appeal. Interestingly, though she couldn't remember the attorney's name, she remembered that he stated "we could file within ten days for an appeal." On cross-examination, she further elaborated that the attorney told them he would appeal it within ten days. Allia acknowledges that she did not have any further contact with the attorney.

Debra Banks, formerly Debra Hayes, testified next on behalf of Smith. Debra is also Smith's daughter. Debra did not view the reoccurring affidavit at the outset of her testimony but recounted similar details about the day her father was sentenced. Debra explained that immediately following the sentencing she and the other family members met in the hallway with attorney Franks. She recalled Franks telling them that Smith asked for an appeal. She further offered that Franks asked the family if they wanted to appeal and that the family responded affirmatively. Similar to Steven, Debra remembered that they were to contact attorney Franks the following Monday. Debra stated that "we called [Franks'] office repeatedly after that" but never spoke to Franks. On cross examination, Debra explained that Franks never expressly stated that he was going to file a notice of appeal. As for the affidavit, Debra admitted that her father sent the affidavits to her and the others. With that the Petitioner rested on his motion.

The Government started and ended its presentation with attorney James Franks. Franks recounted his first contact with Smith and expressed his concern about representing an individual who had fired two other attorneys. Based on his initial apprehension, Franks reduced the details of their attorney-client relationship in a written contract. The contract which was entered into evidence was executed by Franks and Smith on May 30, 2004. As noted *supra*, since Smith had already pled guilty to the indictment, the contract limited Franks' representation of Smith to sentencing only and

expressly excluded any appeal.

On the day of and immediately following the sentencing, Franks recalled speaking with Smith in a cell area. Franks stated that he informed Smith of his right to appeal within ten days. Franks further explained that Smith could hire him, Franks, or any other attorney. Franks then conveyed his recollection of the conversation in the hallway with family members. Franks stated that the family never asked any questions about perfecting an appeal. Rather, the discussion revolved around reassuring the family of Smith's emotional and physical well-being.

Franks offered that the first time he heard of Smith's desire to appeal his sentence was in September 2005, when he, Franks, received a copy of Smith's § 2255 supplemental petition and affidavits. Franks acknowledged that the only contact he had with Smith or his family was a few weeks after the sentencing regarding the return of bond money. When questioned, Franks was adamant that Smith never asked him to file a notice of appeal either before or after the sentencing. Franks was equally steadfast that Smith's family never asked that he pursue an appeal.

### C. Standard for Review

When a defendant collaterally attacks his conviction or sentenced based on the effectiveness of his counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976). In order to demonstrate ineffective assistance of counsel, a defendant must satisfy the two part test of *Strickland v. Washington*, 466 U.S. 668, 687 (9184):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

defense. This requires showing that counsel's errors were so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable.

A petitioner must satisfy *both* prongs of the *Strickland* test to succeed. *Id.* at 687.

The failure to file a notice of appeal is *per se* ineffective assistance of counsel, with or without a showing that the appeal would have merit. *Roe v. Flores-Ortega*, 528 U.S. 470, 483-86, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000). When an attorney fails to file a notice of appeal when requested to do so, the defendant need not demonstrate that he would have been able to raise meritorious issues on appeal. *Id.* at 477-78. Instead, the defendant must only demonstrate that there is a reasonable probability that but for counsel's failure, he would have timely appealed. *Id.* at 484, 486. If the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to an out-of-time appeal. *U.S. v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007) (vacating dismissal of 2255 motion and remanding for evidentiary hearing as to whether defendant requested his counsel file an appeal); *Perez v. Wainwright*, 640 F.2d 596, 598 (5th Cir. 1981).

### D. Discussion

In the case *sub judice*, it is above dispute that no appeal was taken from Smith's sentence. Accordingly, at the hearing, Smith had to demonstrate by a preponderance of the evidence that he did, in fact, timely request attorney James Franks to perfect an appeal. Although Smith by far presented the largest quantity of evidence in the form of affidavits and witnesses, the Government presented the most compelling and convincing proof.

Each of Smith's witnesses were immediate family members with an arguable vested interest in the outcome of the hearing. Each witness was understandably vague about details of the events on the day Smith was sentenced. Each witness, however, was unwavering in their memories about

7

the purported request for an appeal as well as the appropriate time in which to perfect an appeal. Furthermore, accepting their testimony as absolute, Steven and Debra understood that they needed to contact attorney Franks in order to further discuss the possibility of appeal or at least arrange payment for the pursuit of an appeal. Nevertheless, they both acknowledged that there was no further contact with Franks, with the exception of the matter of the bond money. Interestingly, the record reflects that within thirteen days of the entry of judgment, James Franks filed a motion for release of bond money.[6] Consequently, despite their insistence that they were unable to contact James Franks regarding the appeal, some family member[7] did communicate with Franks about the bond money.

To be fair, Steven and Debra insisted that they attempted to contact Franks on several occasions. They remembered leaving messages that went unreturned but could not be more specific. Since Steven and Debra knew they were to contact Franks the Monday following the sentencing and at least Steven knew that Franks was hired for only the sentencing phase of the criminal matter, it would be unreasonable for either of them to expect Franks to continue working on an appeal without an amended attorney employment contract and without discussion of fees.

Furthermore, the individual who would have had the most direct knowledge of the requested appeal would be Smith. Smith, however, did not testify at the hearing. In short, the general theme

---

[6] The Federal Rules of Appellate Procedure allow ten days to perfect an appeal from the date of the entry of a criminal judgment. Fed. R. App. P. 4(b)(1)(A)(i). Judgment was entered on July 6, 2004. Thus, Smith had up to and including July 20, 2004, to file a notice of appeal—one day after the motion for release of bond money was filed by Franks. *See* Fed. R. App. P. 26(a).

[7] There was testimony that either Elaine or Smith's mother did contact Franks regarding the bond money. Who contacted Franks is irrelevant. The consistent fact is that someone, some family member, was able to reach Franks within the ten day "appellate window" which directly contradicts the witnesses' testimony at the evidentiary hearing.

8

of the family's testimony taken together was that after sentencing, the family heard Franks tell them that Smith wanted to appeal. At no point could any of the family witnesses identify with any degree of specificity or detail the day, time or place when Smith unequivocally stated he wanted to pursue an appeal or that he ever asked about the progress of the appeal which he alleged requested. Rather, if Smith did intend to pursue an appeal, he was apparently unconcerned with the process or progress of the appeal given the absence of communication with Franks in the months following his sentencing. Indeed, the family too seemed to be content with the assumption that Franks was going to pursue the appeal in spite of the limited representation plainly stated in the attorney employment contract.

Franks, on the other hand, was resolute in his contention that neither Smith or his family ever requested an appeal. He was equally certain that after the sentencing, with the exception of assisting with the return of bond money, he, Franks, had no further contact with Smith or his family. Franks also testified that he never received any messages from Smith's family members in the weeks following the sentencing.

The court is mindful that the existence of a attorney employment contract which limited Franks' representation to sentencing only, though prudent, does not preclude the possibility of a later request by Smith for an appeal. The court is also aware, as noted by Smith's counsel during the evidentiary hearing, whether or not Franks was paid to perfect an appeal has no bearing on the issue to be resolved–whether Smith timely asked Franks to appeal his sentence. Unfortunately, the court has little more evidence to answer this question than it did before the evidentiary hearing–especially in support of Smith's claim. As noted above, the testimony elicited from Smith's family members was scantily more than the superficial details included in their affidavits which were in all likelihood

prepared by Smith.

In addition to Franks' testimony, what is most illuminating, however, is the behavior or absence of behavior by the family members and Smith himself following the imposition of his sentence. If Smith had truly conveyed his desire to seek appellate review of his sentence, as the party who executed the attorney employment contract, he knew that further arrangements with Franks would be necessary. Yet, apparently Smith did not pressure his family to contact Franks nor did he make inquiry about the process or progress of the purported appeal. Then, after making a few attempts, his family essentially surrendered their efforts to retain Franks for the appeals process. This scenario simply defies logic, is inconsistent with the family's vehement insistence that Smith intended to pursue an appeal and is contradicted by the record. Succinctly stated, the court is unpersuaded that Smith asked Franks to file a notice of appeal.

As a result, the court finds that Smith has failed to prove by a preponderance of the evidence that he requested attorney James Franks to file a notice of appeal, timely or otherwise. Therefore, Smith's last remaining claim in his § 2255 petition is denied.

A separate judgment in accordance with this opinion shall issue this day.

This the 20 day of June, 2008.

_____
SENIOR JUDGE